IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

|  |  |  |
|---|---|---|
| **HEATHER H.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2:22cv239** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Heather H. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 11.

Presently before the Court are the parties' cross motions for summary judgment. ECF Nos. 13, 16. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for

Summary Judgment, ECF No. 13, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed applications for disability insurance benefits ("DIB") and SSI on October 1, 2008, alleging disability due to bipolar, hypothyroidism, hepatitis, tumor, endometriosis, anxiety, high cholesterol, and migraines. R. at 81–82.[1] Plaintiff's applications were initially denied on March 11, 2020, and again denied upon reconsideration on October 28, 2020. R. at 100, 142. On November 6, 2020, Plaintiff requested a hearing before an administrative law judge. R. at 210.

A hearing was held on July 20, 2021, at which Plaintiff appeared with counsel before Administrative Law Judge Kerith Cohen ("the ALJ"). R. at 34–62. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 42–60. On November 15, 2021, Plaintiff amended her alleged disability onset date to October 31, 2019. R. at 306. When she amended her alleged disability onset date, Plaintiff acknowledged she would not be eligible to receive DIB. R. at 306. On December 13, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 15–27. In the decision, the ALJ dismissed Plaintiff's claim for DIB because Plaintiff is not entitled to it since amending her alleged disability onset date. R. at 15–16. Therefore, the ALJ only addressed Plaintiff's application for SSI. R. at 15–16. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on March 30, 2022, making the ALJ's decision the final decision of the Commissioner. R. at 1–7.

---

[1] "R." refers to the certified administrative record that was filed under seal on August 2, 2022. ECF No. 10, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

Having exhausted her administrative remedies, on June 2, 2022, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On September 6, 2022, Plaintiff filed a Motion for Summary Judgment and accompanying memorandum in support. ECF Nos. 13–14. On October 5, 2022, the Commissioner filed a Motion for Summary Judgment and memorandum in support. ECF Nos. 16–17. Plaintiff filed a reply on October 26, 2022. ECF No. 18. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was forty years old at the time of her amended disability onset date of October 31, 2019. R. at 81, 306. Plaintiff lives with her adult daughter who is disabled. R. at 42–43. Plaintiff completed one year of college. R. at 43. Plaintiff has not worked for many years, but previously worked as a waitress. R. at 44–45.

### A. Plaintiff's Medical Records Relevant to Alleged Physical/Mental Impairments[2]

Plaintiff provided a variety of medical records relating to her mental health impairments. R. at 709–41, 778–85, 806–15, 885–98, 907–18. Plaintiff receives mental health care from Dr. Jeffrey H. Morse, M.D. at Tidewater Psychotherapy Services. R. at 709–47, 776–815, 878–98. The record includes notes from monthly appointments with Dr. Morse between March 4, 2019 and May 14, 2021. R. at 741, 885. Plaintiff sought treatment for obsessive-compulsive disorder, post-traumatic stress disorder, ADHD, severe opioid use disorder, and bipolar II disorder. R. at 740. Dr. Morse reported Plaintiff was prescribed Adderall, Saphris, Lorazepam, Xanax, Methadone, and Narcan for her mental health impairments and that Plaintiff complied with her treatment, had good tolerance, and good symptom control. *E.g.* R. at 733, 735, 738, 740, 806.

---

[2] Because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to her physical impairments.

Dr. Scarlett Jett, Psy.D., a licensed clinical psychologist, completed a psychological evaluation and medical source statement for Plaintiff. R. at 907–18. Dr. Jett diagnosed Plaintiff with PTSD with panic attacks, unspecified bipolar and related disorder with psychotic features, opioid use disorder in sustained remission, cocaine use disorder in sustained remission, and unspecified ADHD. R. at 914. In the medical source statement, Dr. Jett found Plaintiff has no limitation in: understand and remember simple instructions, carry out simple instructions, and the ability to make judgments on simple work-related decisions. R. at 916. Dr. Jett found Plaintiff has mild limitations in: understand and remember complex instructions, carry out complex instructions, and the ability to make judgments on complex work-related decisions. R. at 916. Dr. Jett found Plaintiff has a marked limitation in: interact appropriately with the public, supervisors, and co-workers and respond appropriately to usual work situations and to changes in a routine work setting. R. at 917. Dr. Jett opined Plaintiff should continue with psychiatric treatment and restart individual psychological therapy. R. at 914.

**B. Relevant Mental Evaluations Completed by State Agency Examiners**

At the initial level, Dr. William Carne, Ph.D., reviewed Plaintiff's medical records. R. at 81–100. Dr. Carne opined Plaintiff's depressive, bipolar, and related disorders, anxiety and obsessive compulsive disorders, trauma and stressor related disorders, personality disorders, and attention deficit/hyperactivity disorder are all severe. R. at 93. Dr. Carne opined Plaintiff has no impairment in understanding, remembering, or applying information; a mild impairment in adapting or managing oneself; and a moderate impairment in interacting with others and in concentration, persistence, or maintaining pace. R. at 93.

Dr. Carne made residual functional capacity determinations. R. at 97–98. Dr. Carne opined Plaintiff does not have understanding and memory limitations, but does have sustained

4

concentration and persistence limitations. R. at 97. Dr. Carne opined Plaintiff does have social interaction limitations, but does not have adaptation limitations. R. at 98.

Dr. Carne opined Plaintiff is not significantly limited in the ability to carry out very short and simple instructions, the ability to carry out detailed instructions, the ability to sustain an ordinary routine without special supervision, and the ability to make simple work-related decisions. R. at 97–98. Dr. Carne found Plaintiff is not significantly limited in the ability to ask simple questions or request assistance and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. at 98.

Dr. Carne opined Plaintiff is moderately limited in the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to work in coordination with or in proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. at 97–98. Dr. Carne added that with regard to Plaintiff's concentration, persistence, or pace she has moderate difficulties based on her psychological symptoms that consist of ADHD, bipolar, PTSD, and personality disorder, which would cause limitations in carrying out task if triggered. R. at 98. Dr. Carne found Plaintiff is moderately limited in the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. R. at 98. Dr. Carne explained Plaintiff has moderate difficulties in social functioning because Plaintiff indicates she does not spend time with

others, has problems getting along with individuals, is somewhat guarded, and has a restricted affect. R. at 98.

At the reconsideration level, Dr. Stephen Saxby, Ph.D., reviewed Plaintiff's medical records. R. at 138–40, 153–55. Dr. Saxby opined Plaintiff does not have understanding and memory limitations, but does have sustained concentration and persistence, social interaction, and adaptation limitations. R. at 139–40.

Dr. Saxby opined Plaintiff is not significantly limited in the ability to carry out very short and simple instructions, the ability to sustain an ordinary routine without special supervision, and the ability to make simple work-related decisions. R. at 139. Dr. Saxby opined Plaintiff is not significantly limited in the ability to ask simple questions or request assistance and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. at 139–40. Dr. Saxby opined Plaintiff is not significantly limited in the ability to be aware of normal hazards and take appropriate precautions and the ability to travel in unfamiliar places or use public transportation. R. at 140. R. at 154.

Dr. Saxby opined Plaintiff is moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to work in coordination with or in proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. at 139. Dr. Saxby noted with regard to concentration, persistence, or pace, Plaintiff's symptoms of ADHD, bipolar, PTSD, and personality disorder would cause limitations if triggered. R. at 139. Dr. Saxby opined Plaintiff is

6

moderately limited in the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. R. at 139–40. Dr. Saxby noted Plaintiff has moderate difficulties in social functioning because Plaintiff indicates she does not spend time with others, has problems getting along with individuals, is somewhat guarded, and has a restricted affect. R. at 140. Dr. Saxby opined Plaintiff is moderately limited in the ability to respond appropriately to changes in the work setting and in the ability to set realistic goals or make plans independently of others. R. at 140. Dr. Saxby noted Plaintiff's poor judgment and impaired decision making at times was the explanation for the moderate limitation in adaptation capacities. R. at 140. Dr. Saxby opined Plaintiff has a moderate limitation in interacting with others and in concentration, persistence, or maintaining pace. R. at 154. Dr. Saxby found Plaintiff has a mild limitation in understanding, remembering, or applying information and adapting or managing oneself. R. at 154. Furthermore, Dr. Saxby found Plaintiff's mental health impairments to all be severe. R. at 154.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified about her mental and physical impairments. R. at 44–53. Plaintiff has schizophrenia, obsessive compulsive disorder, and anxiety. R. at 47–48, 51. Plaintiff's mental health symptoms include nightmares and speaking to people who are not real. R. at 46–47. Plaintiff's anxiety is triggered by cars, crowds, and when she is far from home. R. at 47–48. Plaintiff's anxiety attacks can last up to half a day and to calm down she relies on her daughter and neighbor, she sits in her car, or she goes home. R. at 48–49. Plaintiff has to be reminded to get out of bed and shower about three times in a good week or five or six times in a bad week. R. at 49–50.

Plaintiff's weight is affected by her mental health. R. at 44, 50. Plaintiff testified she had two strokes, has trouble with sleep, has a thyroid problem, has a tumor, has endometriosis, has leg swelling, has migraines, and has bald spots from medication she takes. R. at 48–53. Plaintiff testified she can only sit for less than two hours and can only stand or walk for about four hours. R. at 51–52.

Plaintiff lives with her adult daughter who is disabled. R. at 42–43. Plaintiff's landlord does not charge them rent as long as they notify the landlord if they see anything strange. R. at 45. Plaintiff's friend pays for her lights. R. at 45. When Plaintiff was fourteen, her mom left her an hour and a half away from home where Plaintiff lived behind a dumpster for about six months and then was taken in by a couple. R. at 53. Plaintiff became pregnant as a teenager, so she went back to living with her mom, but when Plaintiff miscarried her mom threw her out. R. at 53. Plaintiff was in abusive relationships. R. at 53.

Plaintiff does not drive by herself because she gets anxiety on the road and usually asks a neighbor or her daughter's girlfriend to drive her. R. at 44. Plaintiff does not cook, but sometimes makes herself a drink. R. at 50. Plaintiff has not worked in many years, but previously worked as a waitress. R. at 44–45.

### III. <u>THE ALJ'S DECISION</u>

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §

8

416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. § 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 31, 2019, Plaintiff's amended alleged disability onset date. R. at 18. At step two, the ALJ found that Plaintiff had the following severe impairments: thyroid disorder, PTSD, bipolar disorder, obsessive compulsive disorder, ADHD-combined type, and substance use disorder. R. at 18. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 19–20. The

ALJ specifically considered listings 12.04, 12.06, 12.11, and 12.15 and the ALJ considered

"whether the 'paragraph B' criteria are satisfied." R. at 19. The ALJ found Plaintiff has moderate

limitations in: understanding, remembering, or applying information; in interacting with others; in

concentrating, persisting, or maintaining pace; and in adapting or managing oneself. R. at 19–20.

After step three, the ALJ determined that Plaintiff had the residual functional capacity

("RFC") to perform light work. R. at 20. The ALJ included the following limitations: occasionally

stoop and crawl; cannot climb ladders, ropes, or scaffolds; cannot work with moving mechanical

parts, operate heavy equipment, or work at unprotected heights; can understand, remember, and

carry out rote and routine instructions and tasks that require the exercise of little independent

judgment or decision-making and can be learned from a short demonstration and an opportunity

for training up to thirty days; cannot have face to face interaction with the public while performing

work task, no tandem tasks or teamwork; can tolerate occasional interaction with supervisors while

performing work tasks; can perform simple, routine tasks for two hours at a consistent pace

throughout the workday; cannot work at a production rate pace where each task must be completed

within a strict time deadline; and can adapt to and manage a low stress environment which is

defined as one with little change in terms of tools used, the processes employed, or the setting

itself, and change, where necessary is introduced gradually. R. at 20–21.

In making this determination, the ALJ considered "all symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and SSR 16-3p."

R. at 21. The ALJ "also considered the medical opinion(s) and prior administrative medical

finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c and 416.920c." R. at 21.

At step four, the ALJ determined that Plaintiff has no past relevant work. R. at 26. The ALJ also found Plaintiff was twenty-eight years old, which is defined as a younger individual age 18–49 on her alleged disability onset date.[3] R. at 26. The ALJ held Plaintiff has at least a high school education and transferability of job skills is not an issue because Plaintiff does not have past relevant work. R. at 26. At step five, the ALJ determined, based on Plaintiff's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. at 26. Thus, the ALJ determined that Plaintiff was not disabled from October 31, 2019, through the date of the ALJ decision, December 13, 2021. R. at 27.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's

---

[3] The undersigned notes that the ALJ's reference to Plaintiff's age was her age at the time of her original claimed disability onset date in 2008. At the time of her amended disability onset date in 2019, Plaintiff was actually thirty-nine years old. R. at 81, 306. This is still considered a younger individual, between the ages of 18–49.

conclusions. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ).'" *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. <u>ANALYSIS</u>

Plaintiff's appeal to this Court raises one challenge to the ALJ's decision. Plaintiff argues the ALJ erred by not properly evaluating Dr. Jett's opinion.

### A. The ALJ properly evaluated Dr. Jett's opinion.

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate Dr. Jett's opinion. ECF No. 14 at 9–13; ECF No. 18 at 1–3. Plaintiff argues the ALJ's evaluation of Dr. Jett's opinion was inadequate because the ALJ did not discuss supportability and consistency, which are required by Social Security regulations. ECF No. 14 at 11–13.

In response, the Commissioner argues the ALJ's assessment of Dr. Jett's opinion and the RFC determination are supported by substantial evidence. ECF No. 17 at 13–20. The Commissioner argues the ALJ is not obligated to use the specific terms "supportability" or "consistency" so long as the ALJ properly addresses the factors and includes sufficient analysis.

ECF No. 17 at 15.  The Commissioner also argues the ALJ did address the supportability and consistency of Dr. Jett's opinion.  ECF No. 17 at 16–20.

Under the Social Security Administration regulations, the ALJ must consider each medical opinion in the record.  20 C.F.R. § 416.920c(b)(1) ("[W]hen a medical source provides multiple medical opinion(s) . . . we will articulate how we considered the medical opinions . . . from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.").  Under the new Social Security Administration ("SSA") regulations, a medical opinion is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following abilities:]
>
> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

§ 416.913(a)(2).  A "medical opinion" does not include "a statement that reflects a judgment(s) about the nature and severity of your impairment(s)."  § 416.913(a)(3) (defining categories of other medical evidence).

Under the SSA regulations,[4] ALJs must consider each medical opinion in the record and articulate how persuasive they find the medical opinion or prior administrative finding based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion. § 416.920c(b), (c)(1)–(5). Supportability and consistency are "the most important factors" in determining the persuasiveness of a medical opinion, and accordingly, ALJs must explain how those factors are considered in the decisions. § 416.920c(b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are . . . the more persuasive the medical opinion[]" will be. § 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion . . . is with evidence from other medical sources and nonmedical sources . . . the more persuasive the medical opinion[]" will be. § 416.920c(c)(2). ALJs may explain how they considered the other factors, including the medical source's relationship with the claimant, but are only required to do so when contradictory medical opinions regarding the same issue are equally supported by and consistent with the record. § 416.920c(b)(2)–(3). If medical opinions regarding the same issue are equally supported by and consistent with the record, ALJs must articulate the other factors and consider their impact on the persuasiveness of the medical opinions. § 416.920c(b)(3).

Importantly, ALJs do not have to use specific language or a specific formula when writing their decisions. *Todd A. v. Kijakazi*, No. 3:20cv594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021). As long as an ALJ sufficiently and thoroughly considers the record and medical evidence, the ALJ generally does not err. *Gassaway v. Colvin*, No. 1:12cv982, 2013 WL 2389894, at *6

---

[4] Because this matter involves a claim filed after March 27, 2017, the revised regulations regarding the evaluation of medical opinions set forth in § 404.1520c apply in this case. Under the new regulations, ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ." § 404.1520c(a).

(E.D. Va. May 28, 2013). Therefore, as long as ALJs use the required factors when considering the medical opinions, they do not have to use the exact words "supportability" or "consistency." *Todd A.*, No. 3:20cv594, 2021 WL 5348668, at \*4. Also, an ALJ's decision complies with SSA regulations so long as the ALJ discusses a source's persuasiveness. *Id.* at \*5 ("The requisite analysis under the new regulatory scheme hinges on the ALJ's articulation of a source's persuasiveness.").

"The 'listings' is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). The purpose of the listings is to describe certain impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." § 416.925. "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." *Bennett*, 917 F.2d at 160. "When a claimant satisfies a listing by meeting all its specified medical criteria, he presumably qualifies for benefits." *See id.* Listings 12.04, 12.06, 12.11, and 12.15 have paragraph B criteria, which "provides the functional criteria we assess to evaluate how [a plaintiff's] mental disorder limits [his or her] functioning." 20 C.F.R. Part 404 Subpart P, Appendix 1 § 112.00(A)(2), (A)(2)(b). To satisfy the paragraph B criteria, the plaintiff's mental disorder must result in one extreme limitation or two marked limitations in the four areas of mental functioning. § 112.00(A)(2)(b). The four areas of mental functioning are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.*

In evaluating whether ALJs make an error of law in Social Security disability determinations, the Fourth Circuit uses a harmless error analysis. *See Mascio v. Colvin*, 780 F.3d

632, 639 (4th Cir. 2015). "The harmless error doctrine prevents a remand when the ALJ's decision is 'overwhelmingly supported by the record though the agency's original opinion failed to marshal that support' and a remand would be 'a waste of time.'" *Williams v. Berryhill*, No. 1:17cv167, 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curium)). An ALJ's error can be considered harmless when a court, based on the ALJ's entire opinion, determines that the error did not substantively prejudice the plaintiff. *Lee v. Colvin*, No. 2:16cv61, 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016), *report and recommendation adopted*, No. 2:16cv61, 2016 WL 7404698 (E.D. Va. Dec. 21, 2016). When reviewing a decision for harmless error, courts must look at "'[a]n estimation of the likelihood that the result would have been different.'" *Morton-Thompson v. Colvin*, No. 3:14cv179, 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)). "The burden establishing that the error was harmful rests on 'the party attacking the agency's determination.'" *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (citing *Shinseki*, 556 U.S. at 409). If "the circumstances of the case show a likelihood of prejudice, [then harmless error does not apply and] remand is appropriate so that the agency can decide whether consideration is necessary." *Id.* (citing *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2010)).

Here, the ALJ did properly evaluate Dr. Jett's opinion and "considered the functional assessment [Dr. Jett] provided after examining the [Plaintiff] in October 2021." R. at 23. The ALJ summarized the mental health symptoms Plaintiff reported to Dr. Jett, including poor appetite, dysphoric moods, crying spells, loss of usual interests, irritability, fatigue, low self-esteem, diminished sense of pleasure, social withdrawal, flashbacks and nightmares of childhood traumas, and mood instability. R. at 22. The ALJ also cited Plaintiff's depression, anxiety, and panic

16

attacks. R. at 22. The ALJ also discussed the notes and findings Dr. Jett made as well as the

functional assessment Dr. Jett provided. R. at 22–23. Furthermore, the ALJ discussed Dr. Jett's

opinion that Plaintiff has a marked limitation in her ability to interact with others and regulate

behavior and why the ALJ did not find that persuasive. R. at 23.

The ALJ did not err in this case in his evaluation of Dr. Jett's opinion because the ALJ did

consider the supportability and consistency of Dr. Jett's opinion. The ALJ found "Dr. Jett's

opinion is not consistent with the [Plaintiff's] presentation." R. at 23. In coming to this conclusion,

the ALJ cites Dr. Jett's conflicting findings. R. at 23. The ALJ noted the "inconsistencies between

the [Plaintiff's] statements to Dr. Jett, and functioning noted elsewhere in the record." R. at 23.

Dr. Jett opined that the Plaintiff's manner of relating was poor, but also wrote Plaintiff was

appropriately dressed and groomed, maintained appropriate eye contact, was cooperative, and

spoke fluently and clearly. R. at 23. Additionally, the ALJ also cites inconsistencies between

what the Plaintiff told Dr. Jett and the medical record. R. at 23. For example, the ALJ noted

Plaintiff told Dr. Jett she does not drive and Plaintiff's daughter managed the finances and did the

grocery shopping. R. at 23. However, Plaintiff reported she drives as long as someone is with

her, R. at 23 (citing R. at 361–72), Plaintiff reported she got a new car, R. at 23 (citing R. at 897),

and Plaintiff testified at the hearing that she drove occasionally, R. at 23. Plaintiff also indicated

she paid bills, counted change, and used a check book. R. at 23. Plaintiff also said she went to the

grocery store regularly, R. at 23 (citing R. at 361–72), and that she traveled to Kentucky for a

funeral, R. at 23 (citing R. at 889). The ALJ did "not find the marked limitations [Dr. Jett found]

persuasive . . . ." R. at 23. Accordingly, the ALJ determined Dr. Jett's opinion was not supported

by the medical record and Dr. Jett's own notes of Plaintiff's appearance and Dr. Jett's findings are

inconsistent with the medical record. Therefore, the ALJ sufficiently discussed the factors of supportability and consistency and found Dr. Jett's opinion unpersuasive.

The undersigned finds it important to note the Plaintiff did not identify what additional restrictions or limitations would be warranted if the ALJ had found Dr. Jett's opinion persuasive and included a marked, rather than a moderate limitation, in the RFC. The ALJ did include restrictions to account for Plaintiff's moderate limitation, including no face to face interaction with the public while performing work tasks, no tandem tasks or teamwork, and occasionally tolerating interaction with supervisors while performing work tasks. R. at 21. The ALJ also chose to include a restriction and found Plaintiff cannot work at a production rate pace where each task must be completed within a strict time deadline. R. at 21. The Plaintiff does not address what further restrictions the ALJ might choose to impose or would be necessary.

Finally, even if the ALJ here did err, the Plaintiff does not argue it is harmful. Dr. Jett found Plaintiff has a marked limitation in her ability to interact with the public, supervisors, and co-workers and regulate her behavior, but otherwise found mild or no limitations. R. at 916–17. To satisfy paragraph B criteria and be found disabled, a plaintiff needs a finding of two marked limitations. 20 C.F.R. § 112.00(A)(2)(b). There is no indication that if the ALJ differently considered Dr. Jett's opinion that Plaintiff would be found to have another marked limitation and that a finding of disability would be appropriate. In order to meet the paragraph B requirements, Dr. Jett needed to find Plaintiff has a marked limitation in one of the other three areas of mental functioning people use in a work setting: understand, remember, or apply information; concentrate, persist, or maintain pace; or adapt or manage oneself. Therefore, even if the ALJ did err in considering Dr. Jett's opinion, this would be considered harmless error.

The ALJ did not err in considering Dr. Jett's opinion. Furthermore, even if the ALJ did not sufficiently consider Dr. Jett's opinion according to the new SSA regulations, any deficiency should be considered harmless error.

## VI. **RECOMMENDATION**

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. **REVIEW PROCEDURE**

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 10, 2023